IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KIMBERLY K. EASTERBROOK, | ) | |
| | ) | |
| Plaintiff, | ) | 4:09CV3239 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | MEMORANDUM AND ORDER |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's appeal pursuant to 42 U.S.C. § 405(g) from the Social Security Administration's denial of her request for disability benefits. Filing No. 1. This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). The plaintiff appeals the Commissioner's decision to deny her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

### BACKGROUND

Plaintiff Kimberly Easterbrook (hereinafter "Easterbrook") alleges an onset date of May 22, 2003 (Claim II). However, Easterbrook filed a previous claim (Claim I) which the Commissioner denied on March 22, 2005. Easterbrook asks this court to reopen Claim I and review the denial of benefits in Claim I in conjunction with Claim II. The administrative law judge ("ALJ") declined to reopen Claim I. Filing No. 9, Tr. at 18-19.

Plaintiff was born in October 1962, and is a high school graduate with some months of college. She worked at times as a cashier, cleaner, telephone solicitor, waitress and

hand packer.  She worked several months in a convenience store as a cashier in 2008.  The ALJ determined that at times Easterbrook worked during the relevant time period, but during some periods she did not work.  Filing No. 9, Tr. at 21.  The ALJ found that Easterbrook had a "history of a single kidney failure and removal, history of bilateral tunnel syndrome [carpal], major depressive disorder, general anxiety disorder, and a poly substance abuse disorder until 2005."  Filing No. 9, Tr. 21, Finding 3.  The records also support Easterbrook's allegations of impaired sleep, sleep apnea, back pain, obesity, ankle surgery and continuing ankle issues, and asthma.  The ALJ determined that Easterbrook could not return to her past relevant work and found that Easterbrook could perform some light and sedentary jobs in the economy.  The Appeals Council denied the plaintiff's request for review.  Easterbrook then filed this action in the United States District Court for the District of Nebraska.  Filing No. 1, Complaint.

## LAW

In an appeal of the denial of Social Security disability benefits, this court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole'" and "'may not reverse . . . merely because substantial evidence would support a contrary outcome.'" *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 877 (8th Cir. 2002).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010)).

When reviewing the decision not to award disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the

Commissioner.  *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995).  A decision supported by substantial evidence may not be reversed, "even if inconsistent conclusions may be drawn from the evidence, and even if [the court] may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  Nevertheless, the court's review "is more than a search of the record for evidence supporting the Commissioner's findings, and requires a scrutinizing analysis, not merely a 'rubber stamp' of the Commissioner's action."  *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (internal quotations and citations omitted).  The court must consider evidence that detracts from the Commissioner's decision in addition to evidence that supports it.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).  The court must also determine whether the Commissioner's decision "is based on legal error."  *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000).  The court does not owe deference to the Commissioner's legal conclusions.  *See Juszczyk v. Astrue*, 542 F.3d 626, 633 (8th Cir. 2008).

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To determine whether a claimant is disabled, the Commissioner must perform the five-step sequential analysis described in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520(a), 416.920(a).  Specifically, the Commissioner must determine: "(1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals  an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1;

3

(4) whether the claimant can return to [his] past relevant work; and (5) whether the claimant can adjust to other work in the national economy." *Tilley v. Astrue,* 580 F.3d 675, 678 n.9 (8th Cir. 2009); *see also Kluesner v. Astrue,* 607 F.3d 533, 536-37 (8th Cir. 2010). "Through step four of this analysis, the claimant has the burden of showing that [he] is disabled." *Steed v. Astrue,* 524 F.3d 872, 874 n.3 (8th Cir. 2008). After the analysis reaches step five, however, "the burden shift[s] to the Commissioner to show that there are other jobs in the economy that [the] claimant can perform." *Id.* The regulations explicitly provide that if the Social Security Administration ("SSA") finds that a claimant is disabled or not disabled at a step, the SSA makes its determination or decision and it does not go on to the next step. 20 C.F.R. § 404.1520(a)(4).

## DISCUSSION

First, the court agrees with the ALJ that the prior case (Claim I) need not be reopened, and finds substantial evidence to support that decision by the ALJ. Easterbrook did not request reconsideration of Claim I after the March 2005 denial of her claim. The Eighth Circuit has addressed this issue and held that a decision of the Commissioner declining to reopen a previous determination on the ground of administrative res judicata is not subject to judicial review, absent a colorable constitutional claim. *See Davis v. Sullivan,* 977 F.2d 419, 420 (8th Cir. 1992); *Brown v. Sullivan,* 932 F.2d 1243, 1245-46 (8th Cir. 1991) (*citing Califano v. Sanders,* 430 U.S. 99, 107-09 (1977)). Further, the regulations specifically state that refusing to reopen a prior application is not an "initial determination" subject to judicial review. See 20 C.F.R. § 404.903(l); *Sanders,* 430 U.S. at 107-09. Accordingly, the court will determine whether Easterbrook is disabled from the date of the disability as set forth in Claim II; will view the evidence that relates to this

4

particular onset; and will include relevant evidence that predates the application in Claim II, as it relates to Easterbrook's disability, but not as to the amount of award she might be entitled to receive.

*Treating Physician*

Error exists when an ALJ fails to consider or discuss a treating physician's opinion that a claimant is disabled when the record contains no contradictory medical opinion. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "[A] treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Prosch v. Apfel*, 201 F.3d 1010, 1012-1013 (8th Cir. 2000) (*quoting* 20 C.F.R. § 404.1527(d)(2) (2006)). The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hogan v. Apfel*, 239 F.3d at 961. An ALJ cannot substitute his opinion for the medical opinions. *Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990). .

Easterbrook has seen numerous doctors for a number of conditions. First, Easterbrook has a history of bilateral carpel tunnel syndrome. She has had neurological issues which required surgery on both elbows. She had surgery on both wrists. She has had a total of six surgeries on her wrists/elbows. The ALJ found her problems reaching and dropping objects to be mild. However, even the state agency doctor determined that her handling or gross manipulations would be limited and that she should avoid repetitive motion. Filing No. 9, Tr. at 326. Dr. Gallentine, another agency doctor, two years prior,

reached the same conclusion. In May 2006, Dr. Weaver, a state agency physician, stated that Easterbrook should avoid repetitive motion with her hands. Her other treating physicians likewise noted these limitations. Easterbrook was tested for motor coordination, finger dexterity and manual dexterity and received a rating of 5 in each area, the lowest rating on the scale. Tr. at 251.[1] Dr. Karen Endacott, a consultative disability examiner, stated that Easterbrook has right carpal tunnel syndrome with pain and difficulty handling some objects with right ulnar tunnel release. Filing No. 10, Tr. at 960.

Second, the ALJ failed to give appropriate weight to the treating psychiatrist, Dr. Ahmed, as well as the other treating physicians regarding Easterbrook's mental health issues. The ALJ determined that Dr. Ahmed's records reveal a significant gap in treatment from 2005 till 2007. Easterbrook did in fact report to Dr. Ahmed on at least one occasion that her mood and anxiety were better. Filing No. 9, Tr. at 467.[2] However, contrary to the ALJ's statement, the record shows that Easterbrook saw Dr. Ahmed on a substantial

---

[1] Aptitude levels ratings are divided into five score ranges. A score of 1 indicates that the individual is in "the top 10 percent of the population. This segment of the population possesses an extremely high degree of the aptitude." (U.S. Department of Labor, Revised Handbook for Analyzing Jobs (1991)). A score of 2 is "the highest third exclusive of the top 10 percent of the population. This segment of the population possesses and above average or high degree of the aptitude." (*Id.*) A score of 3 is "the middle third of the population. This segment of the population possesses a medium degree of the aptitude ranging from slightly below to slightly above average." (*Id.*) A score of 4 is "the lowest third exclusive of the bottom 10 percent of the population. This segment of the population possesses a below average or low degree of the aptitude." (*Id.*) A score of 5 is "the lowest 10 percent of the population. This segment of the population possesses a negligible degree of the aptitude." (*Id.*) The Production Worker position (DOT #706.684-022) requires motor coordination 3, finger dexterity 3, and manual dexterity 3 (Janet E. Field, M.A. & Timothy F. Field, M.D., Classification of Jobs According to Worker Train Factors 167 (3d 1988)). The Packing Machine Operator position (DOT #559.685-018) requires motor coordination 4, finger dexterity 4, and manual dexterity 3. (*Id.* at 108). The Maid position (DOT #323.687-014) requires motor coordination 4, finger dexterity 4, and manual dexterity 3. (*Id.* at 61). The Production Worker position (DOT #713.687-018) requires motor coordination 3, finger dexterity 3, and manual dexterity 3. (*Id.* at 171). The Driver position (DOT #919.663-022) requires motor coordination 3, finger dexterity 4, and manual dexterity 3. (*Id.* at 224). The General Clerk position (DOT #249.587-018) requires motor coordination 4, finger dexterity 4, and manual dexterity 4. (*Id.* at 54).

[2] However, the court notes for the record that such is the nature of depression and mental health issues. Often, there are periods where a patient will feel better and will later relapse. The question is whether there is significant improvement so as to allow a claimant to perform substantial gainful activity over a period of time.

6

number of occasions from October 2005 till May 2007.  Filing No. 9, Tr. at 464-515.  In May 2007. Dr. Ahmed opined that Easterbrook could not "hold down a steady job."  Filing No. 9, Tr. at 343.   This finding was based on Easterbrook's mental impairments and psychologically-based symptoms.  Filing No. 9, Tr. at 348-49.

Drs. Stanley Carlock and Ahmed diagnosed Easterbrook with anxiety disorder. Although she took medications for her disorder, Dr. Ahmed still found her attention and concentration to be poor.  Filing No. 9, Tr. at 465.  Dr. Carlock determined that she had average to low average cognitive functioning.  Filing No. 9, Tr. at 482a.  Further, by December 2005, she returned to Dr. Ahmed saying she was depressed and thinking about death again.  Dr. Ahmed said she could not work for 60 days.  Easterbrook also indicated that her other kidney was failing.  In May 2006, the records show she was still stressed out, anxious and hopeless.  Filing No. 9, Tr. at 494.  In July 2006, she returned with anxiety and depression and Dr. Ahmed stated she was not yet ready to go back to work.  Filing No. 9, Tr. at 429. Dr. Carlock determined that Easterbrook had an average to below average cognitive functioning.  Filing No. 9, Tr. at 482a, 18F/20.  Dr. Carlock also determined that Easterbrook may be experiencing a "severe mental disorder" although further testing was suggested.  Filing No. 9, Tr. at 483.

Easterbrook also contends that the ALJ failed to credit the treating psychiatrists' opinions and instead credited Dr. Stone, who saw her one time in late 2006.  Dr. Stone, a consultative physician, found that Easterbrook had a GAF score of 71-80.  Filing No. 9, Tr. at 355.  He further opined that she could do daily activities, remember instructions, and relate to others.  Tr. at 355-56.  Another consultant for the Social Security Administration opined that Easterbrook had moderate limitations with social functioning.  Filing No. 9, Tr.

7

at 316.  The ALJ discounted much of Dr. Ahmed's opinions, the treating psychiatrist for a number of years, and instead credited Dr. Stone with greater weight who only saw plaintiff on one occasion.  This is contrary to 20 C.F.R. § 404.1527(d)(2).  Dr. Ahmed had seen Easterbrook numerous times from 2005 till June 2007.  The ALJ agreed that Dr. Ahmed's records show the claimant's mental health issues contributed to the reduced inability to do work; however, the ALJ also found that this inability was not to the extent alleged.  Tr. at 23.  The court finds, after reviewing the record, that the ALJ does not adequately support this statement.

In June 2008, Easterbrook began treatment with psychiatrist Dr. Sanat Roy.  Filing No. 10, Tr. at 944-45.  Dr. Roy assigned her a GAF score of 55, which means Easterbrook has moderate difficulty in social or occupational functioning.  Easterbrook also saw Gail Ihle, Ph.D., a consultative psychologist, for evaluation.  Filing No. 10, Tr. 965-68.  Dr. Ihle gave her a GAF score of 45, which denotes more severe difficulty in functioning.  Filing No. 10, Tr. at 968.

Third, Easterbrook contends that the ALJ did not duly credit her ankle impairments.  Easterbrook notes that she had ankle surgery in 1995 with hardware removal in 2003 which supports her complaints of ankle pain and relate to her residual functional capacity ("RFC") for standing and walking.  Easterbrook fractured her right ankle and had surgery in August 2003.  She had pain thereafter and complained to her doctors about her ankle pain in 2006 on a number of occasions.  The records show that Easterbrook was still complaining of ankle pain in 2006 and 2007.  Filing No. 9 and Filing No. 10, Tr. at 437, 587-88.  In September 2006, she saw Dr. Wurtz about ankle pain.  Filing No. 9, Tr. at 437.  The records show she still had pain in 2008.  This combined with her obesity, contends

Easterbrook, conflicts with the ALJ's finding that she can spend six hours per shift on her feet.

Fourth, in 2006, she returned to Dr. Wurtz for back pain. She had been going to physical therapy for her back pain. Her physical therapy was not helping, so Dr. Wurtz prescribed Neurontin. She also saw Dr. Wurtz again in May and June of 2006 and received Ultram for pain with a diagnosis of myalgia. Filing No. 9, Tr. at 443-45.

In addition to all the physical and mental impairments listed herein and in the record, plaintiff had a fifth grade equivalent math ability. She testified that in her last job she could operate the push button cash register. However, when the electricity went out, she could not compute the amount owed or the tax on the amount owed. She cannot do percentages or decimals. She left her job of several months, because she was unable to adjust to the new manager.

The court finds the ALJ gave greater weight to the consulting doctors and insufficient weight to the treating doctors. The ALJ separated all of the ailments of Ms. Easterbrook and viewed them one by one. The ALJ did not look at the impairments in combination. *See* 20 C.F.R. § 404.1523 and 20 C.F.R. 404.1545(e).

The ALJ focused on entries in the medical records that show plaintiff was doing well. There is nothing in the medical records to indicate that plaintiff did well over a period of time. On the contrary, she had instances of doing better, but she showed consistent problems with her mental and physical health.

There is substantial evidence in the record that Easterbrook had significant physical and mental impairments, when viewed in combination. The ALJ failed to look at these

9

ailments in combination and failed to give adequate weight to the opinions of the treating physicians. The evidence in combination overwhelmingly supports a finding of disability.

*Vocational Expert*

To assist an ALJ making a disability determination, a vocational expert ("VE") is many times asked a hypothetical question to help the ALJ determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant. A hypothetical question is properly formulated if it incorporates impairments "supported by substantial evidence in the record and accepted as true by the ALJ." *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (citing *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). "[A] vocational expert's responses to hypothetical questions posed by an ALJ constitutes substantial evidence only where such questions precisely set forth all of the claimant's physical and mental impairments." *Wagoner v. Bowen*, 646 F. Supp. 1258, 1264 (W.D. Mo. 1986) (citing *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983)). Courts apply a harmless error analysis during judicial review of administrative decisions that is in part based on hypothetical questions. For judicial review of the denial of Social Security benefits, an error is harmless when the outcome of the case would be unchanged even if the error had not occurred. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003). Because a VE's testimony may be considered substantial evidence "only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies," *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997) (*citing Porch v. Chater*, 115 F.3d 567, 572-73 (8th Cir. 1997), *and Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir. 1996)), the court finds that the VE's testimony was not substantial evidence.

The ALJ determined that Easterbrook could not return to her past work and that her "medically determinable impairments could reasonably be expected to produce the alleged symptoms." Filing No. 9, Tr. at 23. But the ALJ then concluded that vocational testimony had met the Commissioner's step five burden, Filing No. 9,Tr. at 31, finding that Easterbrook could work as a production worker, packing machine operator, maid, driver and general clerk. Filing No. 9, Tr. at 32. The ALJ stated:

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

Filing No. 9, Tr. at 31, Finding 10. Josh Birmingham, plaintiff's last supervisor, indicated that she could do her job duties, understand simple instructions, and indicted she needed some sitting breaks. Filing No. 9, Tr. at 230-33. In June 2008, Mr. Birmingham completed a second work performance examination, noting that it took Easterbrook longer to complete tasks that required her to lift weights above her shoulder but he was satisfied with her performance. Filing No. 9, Tr. at 234 -35.

The ALJ determined that plaintiff could do light work and sedentary work. Easterbrook argues that she cannot do the jobs listed by the VE because of her lack of hand coordination and lack of dexterity. Easterbrook contends that the ALJ erred in considering whether there are realistic jobs that she can perform. Easterbrook contends she is unable to sustain work over time. Easterbrook also states she cannot stand on her feet for six hours a shift, because of the previous fracture in her ankle, ongoing pain, swelling, and obesity, which eliminates many of the jobs cited by the VE. Ms. Easterbrook testified that in her last job as a convenient store clerk she had to sit on a chair several times per shift. She additionally testified that she had never held a steady job during her

11

entire adult life. Easterbrook also argues that the ALJ failed to present her claim of mental health issues and her significant physical health problems to the VE for consideration. The ALJ determined that plaintiff could do light and sedentary work. However, in October 2008, the vocational consultant, Michael McKeeman, indicated that he tested Easterbrook and in motor coordination, finger dexterity, and manual dexterity, she scored in the lowest ten percent of the population. Filing No. 9, Tr. at 250-51. The VE agreed that if all her limitations are true, she is unable to perform substantial gainful activity. Filing No. 9, Tr. at 112.

The court finds the hypothetical questions do not include all of Easterbrook's significant impairments and do not constitute substantial evidence on this record. The ALJ separated all of the ailments of Ms. Easterbrook and viewed them one by one. She did not look at the impairments in combination or present them to the VE in combination. See 20 C.F.R. § 404.1523 and 20 C.F.R. 404.1545(e). The court finds the hypotheticals posed to the VE are defective and are not substantial evidence to support the conclusions of the ALJ.

Further, the court finds the ALJ failed to allow Easterbrook's counsel to adequately question the VE regarding the specific jobs listed as those that could be performed by Easterbrook. The ALJ denied the request of counsel to further examine the VE and closed the hearing. The ALJ has a statutory duty to develop the record, independent of the claimant's burden. *Ballanger v. Johanns*, 495 F.3d 866, 869 (8th Cir. 2007); *Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008). Failure to allow counsel to further develop this evidence, or worse yet, failure of the ALJ to develop this evidence is clear error. Counsel had a right to determine if Easterbrook could perform each of these jobs, particularly given

the small number of jobs listed by the VE. This is particularly true given the fact that Easterbrook scored so low on the aptitude ratings as set forth in footnote 14.

Thus, because the record presented to the ALJ contains substantial evidence supporting a finding of disability, the court may reverse the case for entry of an order granting benefits to the claimant. *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir. 1984). "Where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan,* 957 F.2d 611, 614 (8th Cir. 1992). In this case, the substantial evidence supporting a finding of disability is overwhelming. Under the circumstances, further hearings would merely delay benefits; accordingly, an order granting benefits is appropriate. *Id.*

THEREFORE, IT IS ORDERED that the determination of the Commissioner is reversed in favor of the plaintiff. This case is remanded for a determination of benefits. A separate judgment will be entered in conjunction with this Memorandum and Order.

DATED this 8th day of September, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.